CITY MAGISTRATE'S COURT,

FOURTH DISTRICT—FIRST DIVISION,

January 18, 1915.

## JOHN BARRY v. MARY KNOBLAUCH.

SANITARY CODE, SECTION 80–A.—MUZZLING DOGS.

The Board of Health should use all reasonable means to check disease and to safeguard the public against any peril to life or health throughout the city and an ordinance forbidding an unmuzzled dog to be led by a leash is a reasonable provision.

APPEARANCES.

*Assistant Corporation Counsel Borowsky* for the People.

*Bertha Rembough,* Counsel for the Defense.

The defendant is charged with having permitted a dog which she had on the end of a leash to be in a public place in the City and County of New York without a muzzle, in violation of the provisions of the Sanitary Code in force and effect in the said City at that time.

FRESCHI, C. M.:

The ordinance is challenged as unconstitutional. Section 80–A provides as follows:

" No unmuzzled dog shall be permitted, at any time, to be on any public highway or in any public park or place in the City of New York."

The power in the City of New York to adopt a reasonable sanitary code has been sustained and I find nothing in this ordinance on which to base a judgment that the exercise of its general power has been unfair or unreasonable in this instance or that it violates the fundamental law or is inconsistent with any of the general statutes of the state.

It was often said that a dog is entitled to one bite, but that day has gone by. I have never seen the person who made such claim that would allow the dog to take that one bite out of him. Under certain conditions in life in the past a dog had its useful purposes of watching and protecting his master, so that it matters not in which direction you turn for a reason one must conclude that both the animal's utility and his potentiality for harm lie in the mouth.

There is no question that there is no useful purpose for a dog in the city. Its ownership is purely a matter of sentiment on the part of the owner, in other words, that person owns a dog to satisfy some personal desire and if that be so, the owner must accede to and abide by reasonable law.

It seems to be along the line of the general trend of thought in every progressive community that the dog has no place therein. This regulation is distinctly in line with this idea.

Since the animal is not only useless but is kept for the satisfaction of one individual who should recognize how potentially dangerous the animal is to a vast number of people, it would be unfair to allow the owner of the dog, should that owner be permitted to selfishly follow his beliefs regarding the freedom of the animal, in the face of public opinion and written laws, to subject the rest of the people to the dangers of being bitten.

I love dogs; but I love children better and am concerned with their safety first.

A dog on the end of a leash can make himself a menace. The mere fact that a dog is on the end of a leash is no guarantee that he can work no harm. There are a hundred possibilities of

danger were he mad—the condition against which we are guard-
ing—that erstwhile loving dog would first bite his own master,
after which he could easily tear loose and have complete free-
dom to work harm.   On the other hand, were the dog muzzled,
even though he accidentally wrenched free from restraint, that
dog, although he might dash to and fro among the people, could
work no harm.   The other fellow's dog always looks better on
the end of a leash when he is muzzled, and those who protest
most against this regulation are the very people who would
hold the same opinion about the other man's dog.   A dog may
even get free by biting his leash and inasmuch as a dog's biting
propensities are never known, it is a far better thing that the
city has done in the matter of this regulation than first to per-
mit the dog nuisance and then cure it.   The Greeks always said:
" Make the dog your companion, but hold fast your staff."   In
these times we say:   " Muzzle him! "   We must recognize that
the fact that dogs serve no notice before they bite, although
they ought to bark before they bite.   The silent dog is as much
of a mystery as the " still water," and so long as they have
teeth, they will bite.

This is the human side of the case.   There is another side,
that no lover of dogs but must agree with me, if he be a fair
man, that is, if some dogs are to be allowed on the streets with-
out muzzles, would it be just to secure the mouths of some other
dogs, rendering them defenseless while permitting the other
dogs to go free to work their vicious tendencies.   It would be
equivalent to tying one boy's hand behind his back, and per-
mit the neighborhood bully to go around and beat him.   If
this condition were to be allowed to go on, the law abiding citi-
zen would be penalized by the danger to which both he and his
animal are subject.   This would be an unfair advantage.

Then there is the danger to the owner of the dog himself, for
it has been well said that man may provoke his own dog to bite
him.

On the whole case, the duty of the Board of Health is plain. It shall use all reasonable means to check disease and to safeguard the public against any peril to life or health throughout the city.

The Corporation Counsel on behalf of the Board of Health having applied for the transfer of this case to the Court of Special Sessions for trial, and in view of the facts charged herein and of the provisions of Section 95 of the Inferior Criminal Courts Act. (Chap. 659, Laws, 1910), as sustained by the decision in the case of the People Ex rel. Cohn v. The Warden etc., 150 App. Div. 419, the defendant will be held to answer for trial in default of one hundred dollars' bail.